TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|                            |   |                     |
|----------------------------|---|---------------------|
| OPINION                    | : |                     |
|                            | : | No. 96-201          |
| of                         | : |                     |
|                            | : | November 21, 1996   |
| DANIEL E. LUNGREN          | : |                     |
| Attorney General           | : |                     |
|                            | : |                     |
| MAXINE P. CUTLER           | : |                     |
| Deputy Attorney General    | : |                     |
|                            | : |                     |

_____

THE HONORABLE JAN GOLDSMITH, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May a school bus travel in a high-occupancy vehicle lane located in a separate corridor in the middle of a state freeway if its entry and exit are from an overpass from the right-hand lane of the freeway?

CONCLUSION

A school bus may not travel in a high-occupancy vehicle lane located in a separate corridor in the middle of a state freeway even though its entry and exit are from an overpass from the right-hand lane of the freeway.

ANALYSIS

The Department of Transportation ("Department") has established exclusive use of certain highway lanes for high-occupancy vehicles ("HOV"s). An HOV is any vehicle containing two or more persons, the exact number being subject to the Department's determination for the particular highway. (See, e.g., Sts. & Hy. Code, § 30794, subds. (e), (f).) Vehicle Code section 21655.5[1] provides:

_____

[1]Section references are to the Vehicle Code unless otherwise specified.

"(a)  The Department of Transportation and local authorities, with respect to highways under their respective jurisdictions, may authorize or permit exclusive or preferential use of highway lanes for high-occupancy vehicles.  Prior to establishing the lanes, competent engineering estimates shall be made of the effect of the lanes on safety, congestion, and highway capacity.

"(b)  The Department of Transportation and local authorities, with respect to highways under their respective jurisdictions, shall place and maintain, or cause to be placed and maintained, signs and other official traffic control devices to designate the exclusive or preferential lanes, to advise motorists of the applicable vehicle occupancy levels, and, except where ramp metering and bypass lanes are regulated with the activation of traffic signals, to advise motorists of the hours of high-occupancy vehicle usage.  No person shall drive a vehicle upon those lanes except in conformity with the instructions imparted by the official traffic control devices.  A motorcycle may be operated upon those exclusive or preferential lanes unless specifically prohibited by a traffic control device.

"(c)  When responding to an existing emergency or breakdown in which a mass-transit vehicle is blocking an exclusive or preferential use lane, a clearly marked mass transit vehicle, mass transit supervisor's vehicle, or mass transit maintenance vehicle that is responding to the emergency or breakdown may be operated in the segment of the exclusive or preferential use lane being blocked by the mass-transit vehicle, regardless of the number of persons in the vehicle responding to the emergency or breakdown, if both vehicles are owned or operated by the same agency, and that agency provides public mass transit services.

"(d)  For purposes of this section, a `mass transit vehicle' means a transit bus regularly used to transport paying passengers in mass transit service.

"(e)  It is the intent of the Legislature, in amending this section, to stimulate and encourage the development of ways and means of relieving traffic congestion on California highways and, at the same time, to encourage individual citizens to pool their vehicular resources and thereby conserve fuel and lessen emission of air pollutants."

We are asked whether a school bus may travel in an HOV lane located in a separate corridor in the middle of a state freeway if its entry and exit are from an overpass from the right-hand lane of the freeway.  We conclude that a school bus may not be driven in an HOV lane.

In reaching this conclusion, we are guided by well established principles of statutory construction.  "In construing a statute, our principal task is to ascertain the intent of the Legislature." (*Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978, 989.)  "In determining intent, we look first to the language of the statute, giving effect to its `plain meaning.'"  (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209.)  "It is well settled that statutes should be construed in harmony with other statutes on the

same general subject." (*Building Material & Construction Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 665.)

We first note that while section 21655.5 does not expressly authorize the use of an HOV lane by a "mass-transit vehicle," its terms appear to contemplate use by such a vehicle. (§ 21655.5, subd. (c).) Does a school bus qualify as a mass-transit vehicle? Section 21655.5, subdivision (d) defines a "mass-transit vehicle" for purposes of the statute as "a transit bus regularly used to transport paying passengers in mass transit service." A "transit bus" is defined in turn as "any bus owned or operated by a publicly owned or operated transit system, or operated under contract with a publicly owned or operated transit system, and used to provide to the general public, regularly scheduled transportation for which a fare is charged." (§ 642.)

We do not view the usual school bus as a "transit bus regularly used to transport paying passengers" (§ 21655.5, subd. (d)), where a transit bus must "provide to the general public, regularly scheduled transportation for which a fare is charged" (§ 642). Rather, a school bus is generally defined as "any motor vehicle designed, used, or maintained for the transportation of any school pupil at or below the 12th-grade level to or from a public or private school or to or from public or private school activities. . . ." (§ 545; see also Ed. Code, § 39830.) School buses thus do not meet the definition of a "mass-transit vehicle" for purposes of traveling in an HOV lane.

Next we consider the fact that school buses are subject to certain specific restrictions in their operation. Two particular limitations support the conclusion that a school bus may not be driven in an HOV lane. First, section 21655, subdivision (b) provides that on highways, school buses must be driven in specially designated lanes or, when specific lanes have not been designated, a school bus "shall be driven in the right-hand lane for traffic or as close as practicable to the right edge or curb." On a "divided highway having four or more clearly marked lanes for traffic in one direction," a school bus "may also be driven in the lane to the immediate left of the right-hand lane, unless otherwise prohibited under this code." (*Ibid*.) The apparent purpose of this statutory limitation is to foster safety, especially considering the characteristic slow speeds and lack of maneuverability for the drivers of school buses.

Here we have been given that the HOV lane in question is located in a separate corridor in the middle of a freeway where entry and exit are provided by an overpass from the freeway's right lane. Even though the HOV lane is in a separate corridor, it does not constitute the right-hand lane of the freeway. All of the reasons why a school bus must be in the right lane militate against the use of an HOV lane for transporting school children. Besides the slow speeds and lack of maneuverability for the drivers of the buses, HOV lanes do not have accessible areas for emergency stops comparable to the right lane of a highway. We cannot construe section 21655 in a manner that would undermine the Legislature's purposes in adopting it. Accordingly we believe that a school bus transporting children may not be driven in an HOV lane without violating the terms of section 21655.

The second restriction of significance is that a school bus transporting students may not be driven in excess of 55 miles per hour. (§ 22406, subd. (c).) The maximum speed a vehicle may be driven on the highway, however, may be 65 or 70 miles per hour, as designated by the Department. (§§ 22348, 22349, 22356, 22366.) HOV lanes are designated for the maximum speed allowed for the

particular area.  It would be unreasonable to allow a slow moving vehicle to impede the normal and reasonable movement of traffic in an HOV lane, where it is prohibited from traveling at the speed limit designated for the HOV lane.  We are to interpret statutory language in a manner which considers "the consequences that would follow from a particular construction and . . . not readily imply an unreasonable legislative purpose. . . .  [A] practical construction is preferred."  (*California Correctional Peace Officers Assn.* v. *State Personnel Bd.* (1995) 10 Cal.4th 1133, 1147.)[2]

We conclude, therefore, that a school bus may not travel in an HOV lane located in a separate corridor in the middle of a state freeway even though entry and exit are from an overpass from the right-hand lane of the freeway.

\* \* \* \* \*

---

[2]Of course, if the HOV lane constituted the right-hand lane of the freeway and the speed limit were 55 miles per hour, our analysis and conclusion would be different.